IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JAVIER YBARRA, | § | |
| | § | |
| Movant, | § | |
| | § | Civil No. 4:16-CV-842-O |
| v. | § | (Criminal No. 4:14-CR-56-O (1)) |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Respondent. | § | |

## OPINION AND ORDER

Before the Court is Javier Ybarra's motion to vacate, set aside, or correct his federal sentence pursuant to 28 U.S.C. § 2255. ECF No. 1. He alleges—contradicting his earlier admissions to the Court—that he was uninvolved with and unaware of the drug transaction that was set to occur on the day of his arrest. ECF No. 1 at 19-21. And so he argues that his counsel was ineffective at sentencing when she failed to request that the Court conduct an explicit scope-and-foreseeability analysis and failed to challenge the Court's implicit conclusion that he was responsible for the methamphetamine recovered incident to his arrest. Because the Court's conclusion—that Ybarra was responsible for the 998.7 net grams of methamphetamine that was recovered during his arrest—was both clear and correct, he cannot show that his counsel was ineffective as he claims. The Court thus denies his Section 2255 motion with prejudice.

### Background

Ybarra pleaded guilty to conspiracy to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. § 846. *See United States v. Ybarra*, 4:14-CR-56-O (1) (N.D. Tex. Aug. 28, 2014), ECF No. 69. In support of his guilty plea, Ybarra signed a factual resume in which he

stipulated the following facts:

> On February 24, 2014, in Fort Worth, Texas, an undercover officer (UC) received approximately one-quarter ounce of methamphetamine from Ybarra that Ybarra had received from Bott. On February 28, 2014, Ybarra was the middle man for Bott with the UC for a purchase of methamphetamine from Bott. After February 28, 2014, the UC and Bott negotiated this purchase and Ybarra was no longer involved in negotiations. Ultimately, however, no deal was reached between the UC and either Bott or Ybarra. Nevertheless, on March 5, 2014, in Fort Worth, DEA agents/officers arrested Bott and Ybarra with under two pounds of methamphetamine, which was the subject of the failed negotiations between the UC, Bott, and Ybarra.

*See United States v. Ybarra*, 4:14-CR-56-O (1) (N.D. Tex. Apr. 25, 2014), ECF No. 19 at 2.

A presentence report ("PSR") was prepared. *See United States v. Ybarra*, 4:14-CR-56-O (1) (N.D. Tex. June 19, 2014), ECF No. 33. The PSR explained that Ybarra and his co-conspirator (Bott) negotiated a large-scale methamphetamine transaction with the UC over the course of 13 days. *See id.* at 5. Those negotiations resulted in a deal to sell two pounds of methamphetamine to the UC at the Durango Bar in Fort Worth. *See id.* After Bott and Ybarra exited the parking lot of the Durango Bar together in a car, police officers stopped the car, arrested Ybarra pursuant to an outstanding warrant, and recovered 998.7 net grams of methamphetamine. *See id.* at 5-6. The PSR made plain that Ybarra was accountable for that 998.7 net grams of methamphetamine. *Id.* at 7. The PSR noted that Ybarra had accepted responsibility for this crime:

> The defendant was interviewed by this officer on May 19, 2014, in the presence of [Ybarra's counsel], at FCI-JU in Forth Worth. He was courteous and cooperative during the interview. [Ybarra] admitted the facts he stipulated to in the Factual Resume are true, and he is guilty of this offense. [Ybarra] reported that he became involved in the offense after being asked by the [UC] to assist in obtaining 1/4 ounce of methamphetamine. [Ybarra] reported he contacted Bott, on behalf of the [UC], and obtained the methamphetamine from Bott. [Ybarra] further admitted to discussing the negotiation of pound-quantities of methamphetamine with the [UC], and he again contacted

> Bott, who eventually "took over" the negotiation. [Ybarra] advised
> that he "stepped away" from the negotiations, until March 5, 2014,
> when he and Bott were arrested.

*Id.* Although Ybarra filed several objections to the PSR, *see United States v. Ybarra*, 4:14-CR-56-O (1) (N.D. Tex. Jul. 2, 2014), ECF No. 39, and separately sought a downward variance, *see United States v. Ybarra*, 4:14-CR-56-O (1) (N.D. Tex. Jul. 10, 2014), ECF No. 43, he did not challenge the PSR's conclusion that he was accountable for the 998.7 net grams of methamphetamine.

The Court adopted the PSR and sentenced Ybarra to 240 months' imprisonment with three years of supervised release. *See United States v. Ybarra*, 4:14-CR-56-O (1) (N.D. Tex. Aug. 28, 2014), ECF Nos. 69 & 70. After an unsuccessful direct appeal, *see United States v. Ybarra*, 626 F. App'x 472 (5th Cir. 2015), Ybarra timely filed this Section 2255 motion. He claims that his counsel was ineffective at sentencing, and his argument proceeds in two parts. First, he claims that counsel should have objected to the Court's procedure of adopting the PSR as a way of ruling on the amount of methamphetamine for which Ybarra was responsible. *See* ECF No. 1 at 23-25; *see also* ECF No. 10 at 3 ("the government's claim that there is 'no authority' directing sentencing courts to make scope and forseeability findings, and that, therefore, [Ybarra's counsel] could not have performed deficiently, is patently frivolous."). Second, he claims that counsel should have challenged the Court's conclusion that he was responsible for the 998.7 net grams of methamphetamine that was the subject of the drug transaction for which he pleaded guilty on the ground that he was "never involved" in that transaction, which "was something that Bott had negotiated entirely on her own after February 28 and was completely unbeknownst to [Ybarra]." *See* ECF No. 1 at 25-26.

## Law & Analysis

The Sixth Amendment guarantees a criminal defendant "reasonably effective assistance" of

counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Claims concerning the alleged ineffective assistance of counsel are reviewed under the two-prong test established in *Strickland*. To prevail on an ineffective assistance of counsel claim under *Strickland*, the movant must show both (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that he was prejudiced by his attorney's substandard performance. *Id.* at 687-91, 694. A court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

There is no merit to Ybarra's first claim. Under the United States Sentencing Guidelines ("U.S.S.G."), a defendant who is convicted of conspiring to conduct a drug trafficking offense is held responsible for the quantity of drugs that is reasonably foreseeable to him and within the scope of the his conspiratorial agreement. *See* U.S.S.G. §§ 2D1.1 & 1B1.3(a)(1)(B) (defining relevant conduct); *see also United States v. Carreon*, 11 F.3d 1225, 1230 (5th Cir. 1994) (explaining relevant conduct under U.S.S.G. § 1B1.3(a)(1)(B) in the context of drug trafficking conspiracies). The United States Court of Appeals for the Fifth Circuit has "rejected the proposition"—upon which Ybarra relies here—"that a court must make a 'catechismic regurgitation of each fact determined'" at sentencing. *Carreon*, 11 F.3d at 1231 (quoting *United States v. Sherbak*, 950 F.2d 1095, 1099 (5th Cir. 1992)). Rather, the district court may make implicit scope-and-foreseeability findings by adopting the PSR. *See Carreon*, 11 F.3d at 1231; *see also United States v. Fernandez*, 559 F.3d 303, 324 (5th Cir. 2009) ("When 'the findings in the PSR are so clear' that guesswork by the reviewing court is unnecessary, the sentencing judge may 'make implicit findings by adopting the PSR.'") (quoting *Carreon*, 11 F.3d at 1231).

That is exactly what the Court did here. The PSR made plain that Ybarra was responsible for the 998.7 net grams of methamphetamine that the police recovered when he was arrested. *See*

*United States v. Ybarra*, 4:14-CR-56-O (1), ECF No. 69 at 7. That amount of methamphetamine was never in dispute. *Cf. Carreon*, 11 F.3d at 1231 (noting that the defendant objected to the PSR's determination of drug quantity and that "the probation officer preparing the report stated that he was submitting the matter 'for the Court's consideration.'"). So, in adopting the PSR, the Court made "a sufficiently clear ruling on the issue" that Ybarra was held responsible for the 998.7 net grams of methamphetamine. *Fernandez*, 559 F.3d at 324. It follows, of course, that his counsel cannot be deemed ineffective for failing to object to the Court's procedure of adopting the PSR as its scope-and-foreseeability findings.

Ybarra next claims that his counsel should have challenged the Court's conclusion that he was responsible for the 998.7 net grams of methamphetamine because those drugs were related to a separate transaction—one "unbeknowst" to Ybarra—between the UC and Bott. *See* ECF No. 1 26 ("what happened was that Bott and the [UC] engaged in their own negotiations, during which the [UC] told Bott rather than purchase 5 pounds of methamphetamine, his buyers were interested in only purchasing 2 pounds of methamphetamine. . . So, [Ybarra] was never involved in a 2 pound deal. That was something that Bott had negotiated entirely on her own after February 28 and was completely unbeknownst to [Ybarra].") (internal quotations and emphasis omitted). Contrary to that claim, Ybarra signed a factual resume in which he admitted that, beginning on February 28, 2014, he acted as the "middle man" for a transaction of methamphetamine between the UC and Bott, and that "on March 5, 2014, in Fort Worth, DEA agents/officers arrested Bott and Ybarra with under two pounds of methamphetamine, which was the subject of the failed negotiations between the UC, Bott, and Ybarra." *See United States v. Ybarra*, 4:14-CR-56-O (1), ECF No. 19 at 2. Moreover, Ybarra admitted to the probation officer who prepared the PSR that (1) "the facts he stipulated to in the Factual Resume are true, and he is guilty of this offense;" (2) he "discuss[ed] the negotiation

of pound-quantities of methamphetamine with the [UC], and [Ybarra] again contacted Bott, who eventually 'took over' the negotiation;" and (3) " that he "stepped away" from the negotiations, until March 5, 2014, when he and Bott were arrested." Consistent with those admissions, Ybarra submitted a sentencing memorandum to the Court in which he acknowledged that "[d]uring the conversation with [the UC], Ybarra continues to report that 'she's getting you two,' 'she's calling right now,' and 'she's there picking up two.' Clearly, [Ybarra] was acting as the middleman between the [UC] and Crystal Bott. This description was confirmed by the agents, who stated that [Ybarra] was 'middle man for pound quantities of methamphetamine, who works for Crystal Bott.'" *See United States v. Ybarra*, 4:14-CR-56-O (1) (N.D. Tex. Jul. 10, 2014), ECF No. 43 at 5.

Ybarra's admissions make clear that he pleaded guilty to being the "middle man" in a criminal conspiracy to distribute 998.7 net grams of methamphetamine. Of course, the 998.7 net grams of methamphetamine were within the scope of that conspiratorial agreement. And Ybarra could reasonably foresee that that amount of methamphetamine would be the subject of the illegal transaction. So, his counsel cannot be deemed ineffective for failing to lodge a clearly meritless challenge the Court's conclusion that Ybarra was responsible for that methamphetamine. In sum, his ineffective assistance of counsel claim lacks merit.

**Evidentiary Hearing**

Upon review of the motion to vacate and the files and records of this case, the Court need not hold an evidentiary hearing to resolve his claims. No evidentiary hearing is required if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). As explained above, the matters reviewed by the Court conclusively show that Ybarra is entitled to no relief.

**Certificate of Appealability**

Considering the record in this case and pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 Proceedings for the United States District Courts, and 28 U.S.C. § 2253(c), the Court denies a certificate of appealability. Ybarra has failed to show (1) that reasonable jurists would find this Court's "assessment of the constitutional claims debatable or wrong," or (2) that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 48 (2000).

In the event that Ybarra elects to file a notice of appeal, the Court notes that he will need to pay the appellate filing fee or submit a motion to proceed *in forma pauperis*.

**Conclusion**

This Section 2255 motion is **DENIED** with prejudice as meritless.

**SO ORDERED** this **21st day** of **March, 2018**.

_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE